IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) Criminal Action No. 22-11-MN-3 |
| DWIGHT BAINES, | ) |
| | ) |
| Defendant. | ) |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant Dwight Baines knowingly participated in a complex money laundering conspiracy. He conspired with multiple other individuals to together launder over $1.5 million in illicitly obtained funds. He used a sham business entity—Baines Properties LLC—and multiple bank accounts to personally launder over $600,000 as part of the money laundering conspiracy. Baines's actions helped victimize numerous individuals and entities.

The United States Probation Office has calculated Baines's advisory guidelines range as 57-71 months, and the government agrees that the Presentence Investigation Report's calculation is accurate. (*See* D.I. 197 (Amended Presentence Investigation Report dated Oct. 31, 2023 ("PSR")) ¶ 128.) The government submits that consideration of the facts of this case and the § 3553(a) factors demonstrates that a 57-month term of imprisonment is sufficient but not greater than necessary to comply with the goals of sentencing. For those reasons and the reasons set forth below, the government respectfully recommends that the Court sentence Baines to a 57-month sentence.[1]

---

[1] As is standard practice in this District, the government is attaching a sealed Attachment A to this Sentencing Memorandum.

**I.      Background**

      1.      Procedural History

On February 1, 2022, a federal Grand Jury returned a one-count indictment charging Baines, along with Olugbenga Lawal, Rita Assane, and Michael Hermann, with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). PSR ¶ 1. On July 24, 2023, Baines appeared before this Court and pleaded guilty to the indictment. PSR ¶ 5. Sentencing in this matter is currently set for November 20, 2023.

      2.      Factual Background[2]

From at least December 2019 through at least June 2020, Baines was a member of a wide-ranging criminal conspiracy that fraudulently obtained money from individual and corporate victims through internet-based fraud schemes, including romance fraud and business email compromises ("BECs"). Baines's role in the conspiracy was to work with Michael Hermann and Rita Assane—all three based in South Florida at the relevant time—to launder the fraud proceeds by receiving money directly from victims, deposit the money into bank accounts set up in the name of a sham business entity (Baines Properties LLC), and further distribute the money to other members of the conspiracy. Hermann, who supervised the activities of Baines and Assane, was in direct communication with C.B., the Nigerian-based leader of the criminal conspiracy. C.B. gave Hermann directions for how to set up a money laundering network and provided detailed instructions for how to receive, deposit, and further distribute the fraud proceeds. Hermann passed those instructions to Baines and Assane, who were responsible for operationalizing the money laundering activities directed by C.B. and Hermann. For his efforts, Baines received a small percentage of the money he personally laundered.

---

[2] The facts in this section derive from the PSR and the evidence presented during the trial of co-Defendant Lawal.

Hermann, Assane, and Baines created numerous business entities to further their money laundering activities. Baines was responsible for setting up business bank accounts in the name of his sham business entity, Baines Properties LLC. Baines was instructed to set up business bank accounts because it was less suspicious to have large dollar financial transactions pass through business bank accounts than through personal bank accounts. Baines used Baines Properties LLC to set up business bank accounts at various financial institutions, including but not limited to TD Bank, Citibank, Wells Fargo, and Bank of America.

Baines used those bank accounts to receive and deposit fraud money directed his way by C.B. and other members of C.B.'s criminal organization. Baines received fraud money in two primary ways—through wire transfers directly into his Baines Properties accounts and through physical checks sent through the mail he would then deposit into Baines Properties accounts. Baines's accounts ultimately laundered over $690,000 of fraud proceeds that originated from at least 17 different fraud victims.

Once the fraud money hit the Baines Properties accounts, Baines would receive instructions from Hermann on what to do with the fraud money. Baines was primarily instructed (i) to send the fraud proceeds to other members of C.B.'s criminal organization, including co-Defendant Lawal, and (ii) use the fraud money to purchase cars that would be shipped to Nigeria to repatriate the criminal proceeds back to Nigeria.

## II. A 57-Month Sentence Is Sufficient But Not Greater Than Necessary To Comply With the 18 U.S.C. § 3553(a) Factors

In sentencing Baines, the Court must consider the statutory factors set forth in 18 U.S.C. § 3553(a). Those factors include the nature and circumstances of the offense; Baines's history and characteristics; and the need to deter Baines and others from contemplating similar crimes in the future. Consideration of the § 3553(a) factors in this case demonstrates that a bottom-of-the-

guidelines 57-month sentence is sufficient but not greater than necessary to comply with the statutory sentencing factors.

The nature and circumstances of Baines's conduct in this case are serious and warrant a significant term of imprisonment. Baines's participation in the money laundering conspiracy lasted for at least six months, during which time he knew that he was actively laundering money for a criminal organization perpetrating romance fraud and other internet-based fraud. His conduct involved setting up numerous bank accounts, the use of a sham business entity, the use of physical office space leased to legitimize the money laundering activity, and the purchase of cars to further the money laundering conspiracy. Baines was not tricked into laundering fraud proceeds; rather, he accepted Hermann's invitation to become involved as a way to make easy money. And he did so without regard to the myriad victims whose money flowed through his accounts. Baines and his co-conspirators' roles in perpetrating the underlying fraud, moreover, were essential. The names of their sham business entities made the fraud more believable to the victims and the individuals perpetrating the frauds could not do so successfully without United States-based money launderers, such as Baines, ready and willing to receive the fraud proceeds.

Despite the seriousness of Baines's conduct warranting a guidelines sentence, his role in relation to Hermann and Assane supports a sentence at the bottom of the guidelines. The evidence suggests that Baines was involved in the conspiracy for a shorter period of time, moved less money, and received less compensation.

Baines's personal history and characteristics likewise support a sentence at the bottom of the guidelines range. Baines reports a difficult upbringing and the PSR reflects minimal criminal history, with his only convictions stemming from conduct Baines engaged in when he was 18 years old. On the other hand, the PSR reflects fairly regular contact with law enforcement and Baines's

self-reported employment history does not reflect any sustained period of legitimate income through much of his adulthood. That employment history, coupled with Hermann's trial testimony that Baines was already involved in small-scale fraudulent activity at the time Baines joined the money laundering activity, suggests that Baines supported himself through crime even before his involvement in the instant offense.

A significant term of imprisonment is also necessary to deter others from engaging in similar criminal conduct. As discussed above, Baines and his co-conspirators played an essential role for the larger criminal conspiracy. Internet frauds such as romance fraud and BECs are frequently perpetrated on American victims by criminal organizations based overseas. To legitimize the underlying frauds, evade bank investigators' prying eyes, and conceal the path of the fraudulent funds, such criminal organizations require money launderers in the United States to serve as first- and second-level recipients of the fraudulently obtained proceeds. And as evidenced by this case, too many people sign up for those roles as a way to make easy money.

And these internet-based frauds continue to divert ever increasing amounts of money from innocent Americans and American businesses into the hands of criminals. Every year between 2019 and 2022, the FBI has identified over 40,000 individuals or entities victimized by romance fraud or BECs.[3] Romance fraud resulted in the loss of over $475 million in 2019, over $600 million in 2020, over $950 million in 2021, and over $735 million in 2022. BECs resulted in the

---

[3] *See* Federal Bureau of Internet Crime Complaint Center, *2022 Internet Crime Report*, p. 23; https://www.ic3.gov/Media/PDF/AnnualReport/2022_IC3Report.pdf;
Federal Bureau of Internet Crime Complaint Center, *2021 Internet Crime Report*, p. 22, https://www.ic3.gov/Media/PDF/AnnualReport/2021_IC3Report.pdf;
Federal Bureau of Internet Crime Complaint Center, *2020 Internet Crime Report*, p. 19, https://www.ic3.gov/Media/PDF/AnnualReport/2020_IC3Report.pdf;
Federal Bureau of Internet Crime Complaint Center, *2019 Internet Crime Report*, p. 19, https://www.ic3.gov/Media/PDF/AnnualReport/2019_IC3Report.pdf.

loss of over $1.7 billion in 2019, over $1.8 billion in 2020, over $2.3 billion in 2021, and over $2.7 billion in 2022.[4]  Imposing a guidelines sentence would send the important message that helping to facilitate internet-based fraud is not an "easy" way to make money and that those who nonetheless decide to engage in such conduct will face the serious consequences merited by their actions.

### III.     Restitution and Personal Money Judgment

The government agrees that the individuals and entities identified in Paragraph 141 of the PSR are owed restitution in the amounts listed and that Baines should be jointly and severally liable for that restitution order along with co-Defendants Lawal, Hermann, and Assane.  The government understands that additional victim-related information may be received by the United States Probation Office prior to sentencing and the government reserves the right to revise its restitution recommendation based on any future revisions or additions to the PSR.

Moreover, pursuant to the parties' Memorandum of Plea Agreement and this Court's Preliminary Order of Forfeiture, Baines's sentence should include a personal money judgment in the amount of $694,248.51.

---

[4] *See* Federal Bureau of Internet Crime Complaint Center, *2022 Internet Crime Report*, p. 22; https://www.ic3.gov/Media/PDF/AnnualReport/2022_IC3Report.pdf;
Federal Bureau of Internet Crime Complaint Center, *2021 Internet Crime Report*, p. 23, https://www.ic3.gov/Media/PDF/AnnualReport/2021_IC3Report.pdf;
Federal Bureau of Internet Crime Complaint Center, *2020 Internet Crime Report*, p. 20, https://www.ic3.gov/Media/PDF/AnnualReport/2020_IC3Report.pdf;
Federal Bureau of Internet Crime Complaint Center, *2019 Internet Crime Report*, p. 20, https://www.ic3.gov/Media/PDF/AnnualReport/2019_IC3Report.pdf.

**IV.    Conclusion**

For the foregoing reasons, the government respectfully requests that the Court sentence Baines to a 57-month term of imprisonment, restitution as set forth in Paragraph 141 of the PSR, and a personal money judgment for $694,428.51.

                        Respectfully submitted,

                        DAVID C. WEISS
                        UNITED STATES ATTORNEY

                        */s/ Jesse S. Wenger*
         By:   Jesse S. Wenger
                        Assistant United States Attorney

Dated: November 9, 2023